UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LISA JACOBS and BREANNA JACOBS,

                Plaintiffs,

          -v-                     1:22-CV-1184

HUDSON VALLEY FAMILY PHYSICIANS,
PLLC, AMIN ELASHKER, D.O., a/k/a
AMEND ELASHKER, D.O., in his individual
capacity, and FRANCESCA HILMI, D.O., in
her individual capacity,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

CHARNY & WHEELER P.C.        RUSSELL G. WHEELER, ESQ.
Attorneys for Plaintiffs          H. JOSEPH CRONEN, ESQ.
42 West Market Street          NATHANIEL K. CHARNY, ESQ.
Rhinebeck, NY 12572

YOUNGWIRTH LAW PLLC      BROOKE D. YOUNGWIRTH, ESQ.
Attorneys for Defendants
63 Cannon Street, Suite B
Poughkeepsie, NY 12601

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

On November 10, 2022, plaintiffs Lisa Jacobs ("Lisa") and Breanna Jacobs ("Breanna") (collectively, "plaintiffs") filed this civil action against defendants Hudson Valley Family Physicians, PLLC ("HVFP"), Amin Elashker, D.O., a/k/a Amen Elashker, D.O. ("Elashker"), and Francesca Hilmi, D.O., ("Hilmi") (collectively, "defendants").  Plaintiffs' complaint alleges claims for hostile work environment, sexual harassment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL").

On December 20, 2022, defendants moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiffs' complaint.  Dkt. No. 10.  Defendants also moved, in the alternative, pursuant Rules 12(d) and 56(a) to grant summary judgment dismissing plaintiffs' complaint.  *Id.*  The motion has been fully briefed and will be considered without oral argument.  Dkt. Nos. 21, 22.

## II.  **BACKGROUND**

HVFP is a medical practice located in Kingston, New York.  Compl. ¶ 10.  HVFP is co-owned by Elashker and Hilmi, who were married prior to 2017.  *Id.* ¶¶ 12–13, 15.  Elashker and Hilmi are Doctors of Osteopathic Medicine.  *Id.*

Prior to her employment, Lisa had been a patient of HVFP and had cleaned Elashker and Hilmi's private residence.  Compl. ¶ 16.  In 2008, Lisa

began working for HVFP as a Special Projects Worker. *Id.* ¶ 17. Sometime after her initial hiring, Elashker forcibly kissed Lisa after she had finished cleaning his residence. *Id.* ¶¶ 18–20. Elashker later telephoned Lisa to apologize for his behavior. *Id.* ¶ 22. After this initial incident Elashker began making inappropriate comments to Lisa and indicated that if she tolerated his behavior, she could advance in her employment with HVFP. *Id.* ¶¶ 23–24.

In 2010, Elashker showed up uninvited to an HVFP employee's birthday party where he again forcibly kissed Lisa. Compl. ¶¶ 25–26. After Lisa objected to Elashker's advance, he assured Lisa that he was her friend and "would take care of her." *Id.* ¶ 27. After this incident, Lisa attempted to distance herself from Elashker to prevent unwanted advances. *Id.* ¶ 28. Elashker responded to Lisa's distance by asking her if the two of them "had a problem," and told her that if that was the case that they could "end this right now." *Id.* ¶ 29. Lisa understood Elashker's statement to be a threat regarding her employment with HVFP. *Id.*

After making this statement to Lisa, Elashker began to escalate his advances toward her. Compl. ¶ 30. He arranged for the two of them to be alone in confined spaces such as elevators, exam rooms, and company vehicles. *Id.* While alone with Lisa, Elashker would frequently, "accidentally" touch her body, including her breasts. *Id.* In addition to his

continued physical advances, Elashker began to send Lisa inappropriate text messages that included propositions to engage with him sexually and photographs of his body and genitals.  *Id.*  Elashker requested that Lisa send him photographs of her naked body in response.  *Id.*

Elashker also began to leave Lisa gifts in her desk drawer at the HVFP office including lingerie, perfume, and jewelry.  Compl. ¶ 32.  While Lisa attended medical appointments at HVFP, where she was still a patient, Elashker made sexual commentary and physical contact with her.  *Id.* ¶ 33. As a result, Lisa ceased medical treatment at HVFP.  *Id.*

Breanna Jacobs, Lisa's daughter, began working for HVFP in May 2014. Compl. ¶ 35.  Breanna was unaware of Lisa's experience working for Elashker.  *Id.* ¶ 36.

In 2017, Elashker and Hilmi began separation and divorce proceedings. Compl. ¶ 38.  During the proceedings, Hilmi became aware of Elashker's text messages to Lisa as well as other women during their marriage.  *Id.* ¶ 39. Hilmi apologized to Lisa for Elashker's conduct and assured her that she would protect her and prevent any future advances by Elashker.  *Id.*  ¶ 41. However, Hilmi did not stop Elashker's continued advances throughout the remainder of Lisa's employment with HVFP.  *Id.* ¶¶ 41–42.

During the spring and early summer months of 2020, Elashker began sending Lisa photographs of himself at hotels and restaurants in New York

City.  Compl. ¶ 43.  Elashker sent photographs of himself—including suggestive poses—enjoying what appeared to be luxury accommodations, often enjoying alcoholic beverages.  *Id.* ¶¶ 44–45.  Elashker's messages also stated that if Lisa "played her cards right" she, too, could enjoy such experiences with him.  *Id.* ¶ 46.

Lisa understood that if her employment with HVFP was to continue, she would have to continue to tolerate Elashker's advances.  Compl. ¶ 51.  After these latest messages, Lisa informed Elashker that she did not wish to interact with him in anyway unrelated to her employment at HVFP.  *Id.* ¶ 53.

On July 15, 2020, Elashker accused Lisa of "not having his back."  Compl. ¶ 54.  That day, defendants terminated Lisa and Breanna's employment with HVFP.  *Id.* ¶ 56.  Defendants claimed that plaintiffs' positions had been "eliminated" due to the business impact of the COVID-19 pandemic.  *Id.*

On April 20, 2021, plaintiffs mailed a complaint to the Equal Employment Opportunity Commission ("EEOC") alleging sex-based discrimination, hostile work environment, and retaliation.[1]  Compl. ¶ 59.  The complaint was delivered to the EEOC office on April 21, 2021.  *Id.*  Plaintiffs received their

---

[1]  Plaintiffs' complaint contains a typo which reads: "On August 17, 2021, Plaintiffs each filed charges against HVFP with the Equal Employment Opportunity Commission (EEOC) alleging sex-based harassment, hostile work environment, discrimination, and retaliation in violation of Title VII, based on the foregoing.  Compl. ¶ 59.  In their opposition papers, plaintiffs clarify that this date was conflated with the date of correspondence from the EEOC.  Pls.' Opp'n, Dkt. No. 21 at 13.  Plaintiff' EEOC charges were mailed to the EEOC on April 20, 2021.  *Id.*

"right to sue" letter from the EEOC on September 16, 2022.  Compl. ¶¶ 60–61.

## III.  <u>LEGAL STANDARD</u>

"To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

In deciding the motion, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation omitted).

## IV.  <u>DISCUSSION</u>

Plaintiffs Lisa and Breanna bring twelve claims against defendants arising under Title VII and the NYSHRL.  Plaintiffs allege that Lisa suffered a hostile work environment (Counts I and V), *quid pro quo* sexual harassment (Counts II and VI), sex-based discrimination (Counts III and VII), and retaliation (Counts IV and VIII).  Compl. ¶¶ 63–111.  Plaintiffs

allege that Breanna suffered sex-based discrimination (Counts IX and XI) and retaliation (Counts X and XII).  *Id.* ¶¶ 112–33.

### A.  <u>Timeliness</u>

To begin, defendants argue that plaintiffs' claims are not timely.  Defs.' Mem., Dkt. No. 10-9 at 6.[2]  The parties have each requested that the Court convert this Rule 12(b)(6) motion into a Rule 56 motion for summary judgment in order to consider extrinsic evidence namely, plaintiffs' EEOC charges.  Defs.' Mem. at 4–5.  However, for the following reasons, plaintiffs' EEOC charges do not constitute extrinsic evidence and may be considered on a motion to dismiss.

Plaintiffs explicitly refer to their EEOC charges in the complaint.  Compl. ¶ 59.  Therefore, the Court may consider these documents incorporated into the complaint by reference.  *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (citations omitted) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference.").  The Court may also take judicial notice of plaintiffs' EEOC charges because they are public records.[3]  *Muhammad*, 450 F. Supp. 2d at 204–05 (citation omitted);

---

[2]  Pagination corresponds to CM/ECF.

[3]  It does not appear that the parties contest the validity of these documents.  *See* Ex. C to Defs.' Mem., Dkt, No. 10-6 at 10–13; Ex. D to Defs.' Mem., Dkt. No. 10-7 at 9–12; Pls.' Opp'n at 13–14.

*Reppert v. N.Y. State Dep't of State*, 2022 WL 2315603, at *1 n.3 (N.D.N.Y. June 28, 2022) (Sannes J.) (collecting cases).

Upon review of plaintiffs' EEOC charges were mailed to the EEOC on April 20, 2021, and delivered to the EEOC on April 21, 2021.  Ex. C at 10–13; Ex. D at 9–12.  EEOC charges must be filed within 300 days of the alleged employer misconduct.  *See Lashley v. N.Y. Univ.*, 2023 WL 6385724, at *2 (E.D.N.Y. Sept. 29, 2023) ("To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days of the alleged act of discrimination.").  Therefore, the statutory time period for plaintiffs' Title VII claims runs from June 24, 2020, until their termination on July 15, 2020. The statutory period for plaintiffs' NYSHRL claim extends from April 20, 2018, until the date of their termination on July 15, 2020.  *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. 2023) ("NYSHRL claims have a three-year statute of limitations."). Accordingly, the Court will only consider plaintiffs' allegations concerning defendants' conduct within the statutory period, where applicable, when evaluating the plausibility of plaintiffs' claims.

## B.  Hostile Work Environment (Counts I and V)

First, Plaintiffs bring a hostile work environment claim under Title VII and the NYSHRL.  Compl. ¶ 63–68.  Plaintiffs allege that defendants

subjected Lisa to a hostile work environment when Elashker sexually harassed Lisa for the entirety of her employment with HVFP.  *Id.*

"To establish a hostile work environment claim, the plaintiff must show that either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  *Krul v. DeJoy*, --- F. Supp. 3d ----, 2023 WL 8449589, at *33 (N.D.N.Y. Dec. 6, 2023) (internal quotation marks omitted) (quoting *Alfano v. Costello*, 294 F.3d 365, 372 (2d Cir. 2002).

This standard contains both objective and subjective elements.  *Krul*, --- F. Supp. 3d ----, 2023 WL 8449589, at *33.  A plaintiff must *subjectively* perceive her work environment to be abusive.  *Id.*  But the misconduct at issue must also be "severe or pervasive enough to create an *objectively* hostile or abusive work environment[.]"  *Id.* (quoting *Bentley v. Autozoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019)) (emphasis added).  To determine whether the work environment is objectively hostile, the Court must look to the totality of the circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Hostile work environment claims are not based on discrete acts by an employer, but on a series of incidents that "occur over a series of days or perhaps years[.]" *Krul*, 2023 WL 8449589, at *33 (quoting *Banks*, 81 F.4th at 259). "Under the continuing violation doctrine, if specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice, a continuing violation may be found." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quotation omitted).

The continuing violation doctrine only applies where the plaintiff alleges discriminatory acts that occurred within the statutory period. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citation omitted). Once a continuing violation is found the court "must consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Id.* (quotation omitted).

Defendants first argue that Lisa's hostile work environment claim is not timely because it refers to defendants' conduct that occurred outside of the statutory period. Defs.' Mem. at 8. Defendants also argue that plaintiffs have not plausibly alleged that she suffered harassment during the statutory period that is actionable under Title VII or the NYSHRL. *Id.* at 10.

Plaintiffs contend that the continuing violation doctrine applies.  Pls.'
Opp'n at 19.  Plaintiffs argue that Elashker's conduct during the statutory
period opens the door for the Court to consider his earlier conduct.  *Id.*

Plaintiffs are correct.  As discussed, *supra*, the statutory period for
plaintiffs' Title VII claims begins on June 24, 2020.  The statutory period for
their NYSHRL begins on April 20, 2018.  Plaintiffs allege that Lisa suffered
discriminatory conduct during the statutory period.  Beginning in the spring
and summer months of 2020, Elashker sent Lisa suggestive photographs of
himself at various hotels and restaurants around New York City.  Compl. ¶¶
43–47.  Drawing all reasonable inferences in plaintiffs' favor, Elashker's
alleged text messages are sufficiently severe or pervasive to be actionable
under Title VII and the NYSHRL.  This conduct during the statutory period
anchors plaintiff's hostile workplace claims to the statutory period and
permits the Court to consider the entirety of plaintiff's allegations.

Therefore, the following events will be considered under the continuing
violation doctrine.  Plaintiffs alleges that between 2008 and 2010, Elashker
forcibly kissed Lisa on her mouth twice.  Compl. ¶¶ 20, 26.  Plaintiffs also
allege that Elashker ensured that he was alone with Lisa during the workday
in confined spaces, where he would "accidentally" touch her body including
her breasts.  *Id.* ¶ 30.  Plaintiffs also allege that Lisa received inappropriate
text messages from Elashker during this time, that included photographs of

his genitals and invitations for sex and for her to send intimate photos in return. *Id.* ¶ 31. Sometime later, Elashker began to leave inappropriate gifts for Lisa in her office desk drawers including lingerie and perfume. *Id.* ¶ 32.

Considering plaintiffs' allegations in a light most favorable to them, plaintiffs has plausibly alleged that Lisa suffered a hostile work environment. Plaintiffs' allegations satisfy the subjective element of the analysis: Lisa herself perceived the conduct as abusive. Plaintiffs' allegations also satisfy the objective element. To defeat a motion to dismiss, plaintiffs need only assert that the conduct was severe or pervasive. Here, plaintiffs allege enough facts to support the notion that it is plausible this conduct was both severe *and* pervasive. Elashker allegedly touched intimate parts of Lisa's body and continued to harass her until sometime in 2017. Accordingly, defendants' motion to dismiss plaintiff Lisa's hostile work environment claim will be denied.

## C. *Quid Pro Quo* **Sexual Harassment (Count II)**

Next, plaintiffs allege that Lisa suffered *quid pro quo* sexual harassment under Title VII and the NYSHRL. Compl. ¶¶ 69–74. Plaintiffs alleges that Lisa was terminated after she rejected Elashker's sexual advances and invitations. *Id.*

"*Quid pro quo* sexual harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for

employment decisions affecting such individual.'" *Girardi v. Ferrari Exp., Inc.*, 2023 WL 2744027, at * 5 (S.D.N.Y. Mar. 31, 2023) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994)).  "To establish *quid pro quo* harassment under Title VII and the NYSHRL, 'it is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'"  *Friederick v. Passfeed, Inc.*, 2022 WL 992798, at *7 (S.D.N.Y. 2022) (quoting *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003)).

*Quid pro quo* sexual harassment claims are based on a discrete action by an employer and are not subject to the continuing violation doctrine.  *See Krul*, 2023 WL 8449589, at *23 (quotation omitted).  Therefore, plaintiffs are limited to the relevant statutory period for Lisa's Title VII and NYSHRL *quid pro quo* harassment claims.

Defendants argue that the messages exchanged during the statutory period do not constitute an invitation for sexual conduct.  *Id.* at 8–9. Plaintiffs allege that Elashker sent Lisa text messages in the late spring and early summer months of 2020 that constituted invitations to engage in a sexual or romantic relationship with him.  Compl. ¶¶ 43–47.

As discussed, *supra*, the statutory period under Title VII extends began on June 24, 2020.  The statutory period under the NYSHRL began on April 20,

2018.  Accordingly, Elashker's earlier, explicit invitations and/or propositions for sex cannot be considered for the purposes of her *quid pro quo* sexual harassment claims.  Nonetheless, plaintiffs' *quid pro quo* claim survives based on their allegations of what occurred *during* the statutory period.

Plaintiffs allege that Lisa received text messages and photographs from Elashker in 2020.  Compl. ¶ 43.  According to plaintiffs, Elashker's photographs depicted him relaxing, drinking alcohol, or posing "suggestively." *Id.* ¶¶ 44–45.  Elashker allegedly sent text message accompanying the images stating that had Lisa "played her cards right," she could have been enjoying these experiences with him.  *Id.* ¶ 46.  Plaintiffs do not allege that these messages contained outright requests for sexual contact.  However, plaintiffs allege that Lisa reasonably understood the subtext of Elashker's messages and photographs—including suggestive poses—to be an invitation for sex.  *Id.* ¶¶ 47–49.  As plaintiffs point out, these messages were sent on the heels of Elashker's decade-long history of propositioning Lisa to engage in a sexual relationship.  *Id.* ¶ 49.  Therefore, for the purposes of this motion to dismiss, plaintiffs have plausibly alleged that Elashker sent Lisa invitations to engage in a sexual relationship with him.

Plaintiffs have also plausibly alleged that rejecting Elashker's advances altered the terms and conditions of Lisa's employment—she was terminated. Plaintiffs claim that after Lisa informed Elashker that she did not want to

interact with him outside of work, Elashker scolded her for "not having his back."  Compl. ¶ 54.  Lisa was terminated the same day.  *Id.* ¶ 56.  It is not implausible that Elashker was referring to Lisa's decision to reject his advances when he stated his reason for terminating her after over ten years with HVFP.

Therefore, plaintiffs has plausibly alleged that Lisa suffered *quid pro quo* sexual harassment.  Accordingly, defendants' motion to these claims will be denied.

### D.  <u>Discrimination (Counts IV, VII, IX and XI)</u>

Next, plaintiffsC allege that they were discriminated against on the basis of their sex when they were terminated by HVFP.  Compl. ¶¶ 75–79, 100–05, 112–16, 122–27.

To bring a discrimination claim under Title VII and the NYSHRL, a plaintiff must allege that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."'  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)).

At the motion to dismiss stage, plaintiffs need not allege facts to demonstrate defendant's discriminatory motive.  *Littlejohn v. City of N.Y.*,

785 F.3d 297, 311 (2d Cir. 2015).  Plaintiffs are only required to plausibly allege the existence of a *prima facie* case of discrimination to trigger the presumption that defendant discriminated against them.  *Id.*  Like *quid pro quo* sexual harassment claims, discrimination claims are based on discrete actions by an employer and are not subject to the continuing violation rule.

Turning first to Breanna's discrimination claims: plaintiffs' allegations concerning Breanna fall short of the pleading requirements to defeat a motion to dismiss.  Plaintiffs allege that Breanna is a member of a protected class and was terminated from her position with HVFP.  Compl. ¶¶ 6, 56.  But Breanna does not allege that she was terminated because of her sex.  Instead, Breanna alleges that she was discriminated against based on her association with her mother.  *Id.* ¶ 113.  Familial relationships, however, are not a basis for sex discrimination under Title VII or the NYSHRL.  *See Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) (holding that plaintiff failed to allege in his Title VII complaint that his employer took an adverse employment action against him on the basis of his "race, gender/sex, national origin, age, disability, color, or religion."); *DeJesus v. Bon Secours Comm. Hosp.*, 2024 WL 554271, at *11 (S.D.N.Y. Feb. 12, 2024) (citation omitted) ("A 'protected class' may be defined by race, gender identity or expression, or disability.").  Plaintiffs allege no other facts to

support Breanna's sex discrimination claims.  Accordingly, Breanna's discrimination claims will be dismissed.

Lisa's discrimination claims fare far better.  Plaintiffs allege that Lisa is a member of a protected class and that she suffered an adverse employment action when she was terminated.  Compl. ¶¶ 5, 56.  Plaintiffs have also plausibly alleged that Lisa was terminated under circumstances giving rise to a minimal inference of discriminatory animus.  Plaintiffs allege that Lisa received text messages from Elashker in 2020—during the statutory period. *Id.* ¶ 43.  After Lisa rejected Elashker's advances and informed him that she wished to only have a professional relationship with him, she was told that she "did not have his back" and was terminated.[4]  *Id.* ¶¶ 53–56.

Therefore, plaintiffs have plausibly alleged that Lisa was terminated under circumstances giving rise to a minimal inference of discrimination.  Accordingly, defendants' motion to dismiss Lisa's discrimination claims will be denied.

### E.  <u>Retaliation (Counts V, VIII, X and XII)</u>

Finally, plaintiffs allege that they were retaliated against when they were terminated from their positions with HVFP.  Compl. ¶¶ 80–84, 106–11, 117–21, 128–33.

---

[4]  Defendants purport to have terminated Lisa due to the business impact of the COVID-19 pandemic—an allegedly legitimate non-discriminatory reason for firing her.  Plaintiffs will be able to develop their theory of pretext in discovery.

Retaliation claims are also analyzed using the *McDonnell Douglas* burden-shifting framework. *Littlejohn*, 795 F.3d at 316 (2d Cir. 2015). Therefore, at the motion to dismiss stage plaintiffs need only "give plausible support to the reduced prima facie requirements." *Id.* To bring a retaliation claim plaintiffs must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Krul*, 2023 WL 8449589, at *39 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). To establish a causal connection for the purposes of a *prima facie* case, plaintiffs may "rely solely on temporal proximity if the protected activity and alleged retaliation occurred 'very close' in time." *U.S. v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 408 (S.D.N.Y. 2018) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The Second Circuit has held that events that occur within two months of each other support a causal connection. *Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))

As relevant here "a plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Davis v. NYS Dept. of Corr. Attica Corr.*

- 18 -

*Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)). Protected activities can also include "'informal protests of discriminatory employment practices, including making complaints to management' provided that they are 'sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.'" *Arkorful v. N.Y.C. Dept. of Educ.*, --- F. Supp. 3d ----, 2024 WL 298999, at *14 (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012)).

Turning first to Breanna's retaliation claims, plaintiffs have not alleged sufficient facts to support her claims. Plaintiffs do not allege that Breanna engaged in a protected activity prior to her termination. Instead, plaintiffs allege that Breanna was retaliated against after *Lisa* complained of sexual harassment. These allegations are insufficient to defeat a motion to dismiss because a plaintiff may not base her retaliation claim on the protected activity of another person. The antiretaliation provisions of Title VII and the NYSHRL protect employees from adverse employment actions taken in response to that employee's protected activity. *Littlejohn*, 795 F.3d at 315. Accordingly, Breanna's retaliation claim will be dismissed.

Plantiffs allege that Lisa, on the other hand, did engage in a protected activity. Plaintiffs claim that Lisa informed Elashker that she no longer wished to engage with him in any way unrelated to her employment with

him.  Compl. ¶ 53.  At the pre-answer motion stage, all reasonable inferences must be drawn in plaintiffs' favor.  While plaintiffs do not allege that Lisa filed a formal complaint, she informed Elashker that she no longer wanted to be subjected to his alleged harassment.  *Id.*  Lisa's request reasonably apprised Elashker of his unlawful employment practices and therefore constitutes a protected activity.

Plaintiffs also allege that Lisa was terminated shortly after making this statement to Elashker.  Compl. ¶ 56.  According to plaintiffs, Lisa advised Elashker that she did not wish to interact with him outside of work in the late spring or early summer of 2020.  *Id.* ¶ 53.  Lisa was terminated on July 15, 2020—mere months later.  *Id.* ¶ 56.  On the day of her termination, Elashker allegedly told Lisa that she did not "have his back."  *Id.* ¶ 54.  It is not implausible that Elashker was referring to Lisa's refusal to accept his continued unwanted advances.  Drawing all reasonable inferences in plaintffs' favor, plaintiffs have alleged a plausible, causal connection between Lisa's termination and protected activity.

Therefore, plaintiffs have plausibly alleged that Lisa was retaliated against.  Accordingly, defendants' motion to dismiss Lisa's retaliation claims will be denied.

## V.  **CONCLUSION**

In sum, the facts contained in the complaint permit only one plaintiff to proceed to discovery: Lisa.  Plaintiffs have plausibly alleged Lisa's claims. Plaintiffs allege that Lisa was sexually harassed by Elashker for over a decade.  After rejecting his latest advances in the summer of 2020, Lisa was terminated from her position with HVFP.  Plaintiffs have plausibly alleged Lisa's claims for a hostile work environment, *quid pro quo* sexual harassment, sex-based discrimination, and retaliation.

Plaintiffs have failed to allege that Breanna suffered sex-based discrimination or retaliation.  While Breanna was terminated, plaintiffs do not allege any facts—other than Breanna's association with Lisa that support the plausibility of Breanna's claims.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss Breanna's discrimination claims (Counts IX and XI) is GRANTED;

2.  Defendants' motion to dismiss Breanna's retaliation claims (Counts X and XII) is GRANTED;

3.  Defendants' motion to dismiss Lisa's hostile work environment claims (Counts I and V) is DENIED;

4.  Defendants' motion to dismiss Lisa's *quid pro quo* sexual harassment claims (Counts II and VI) is DENIED;

5.  Defendant's motion to dismiss Lisa's discrimination claims (Counts III and VII) is DENIED;

6.  Defendants' motion to dismiss Lisa's retaliation claims (Counts IV and VIII) is DENIED; and

7.  Defendants are directed to answer Lisa's hostile work environment claims (Counts I and V), *quid pro quo* sexual harassment claims (Counts II and VI), discrimination claims (Counts III and VII), and retaliation claims (Counts IV and VIII) on or before April 3, 2024.

The Clerk of the Court is directed to terminate plaintiff Breanna Jacobs from the case and to terminate the pending motion.

IT IS SO ORDERED.

Dated:  March 20, 2024
        Utica, New York.

David N. Hurd
U.S. District Judge